**UNITED STATES of America, Appellee,**

v.

**Marc S. KELLEY, Appellant.**

**No. 84–5257.**

United States Court of Appeals, Fourth Circuit.

Argued March 8, 1985.

Decided Aug. 7, 1985.

William R. Shell, Wilmington, N.C. (Murchison, Taylor & Shell, Wilmington, N.C., on brief) for appellant.

Glenda Gordon, Asst. U.S. Atty., Baltimore, Md. (Samuel T. Currin, U.S. Atty., Glenn L. Archer, Jr., Asst. Atty. Gen., Michael L. Paup, Robert E. Lindsay, Alan Hechtkopf, Dept. of Justice, Washington, D.C., on brief), for appellee.

Before HALL and PHILLIPS, Circuit Judges, and HAYNSWORTH, Senior Circuit Judge.

HAYNSWORTH, Senior Circuit Judge:

The defendant was convicted of conspiring to defraud the federal government and of aiding and assisting in the preparation of false W-4 forms. On appeal he advances several contentions, in none of which do we find any merit.

I.

Kelley was the organizer and leader of a group calling themselves the Constitutional Tax Association. With some irony, the doctrine embraced by the Constitutional Tax Association was that the federal income tax is unconstitutional as applied to wages. Kelley had done some research and prepared a legal brief in which he reasoned that wages are received for labor in an exchange of equal value; since no party to the exchange realizes a profit, the exchange is not a taxable event or that there is no gain to be recognized.

Kelley solicited dues paying members. In exchange for their payments to him, he explained how the members might avoid all income tax withholding on their wages and obtain refunds of previously withheld wages. He provided forms for use by the members and gave them detailed instructions as to how they should be filled out. He provided paying members with W-4 forms for the claiming of exemptions from withholding and blank copies of refund claim forms. He provided detailed instructions for the preparation of the W-4 and refund claim forms, while the members were instructed to report zero wages on their 1040A income tax return forms. The packet he provided the members contained what purported to be a legal brief in support of the position that wages were not subject to income taxation and that employers should not withhold anything for federal income taxes. Members were instructed to attach the brief to the W-4 forms.

He also instructed the members to destroy their credit cards and to deal only in cash so that they would leave no paper trails to be followed by the IRS agents.

As part of the consideration for the payments made to him, he held himself in readiness to talk to any employer that declined to honor the claimed withholding exemption form or who threatened to call the claimed exemption to the attention of the Internal Revenue Service.

There was a back-up plan. As he explained to undercover Revenue Agents posing as members of his Association, if an employer could not be persuaded to honor the exemption certificate without reporting it to the IRS, the member should file a W-4 form claiming twelve dependents. Kelley told them of his understanding that if fourteen or more dependents were claimed the employer was required to report the matter to the IRS, but that the employer would not do so if no more than twelve were claimed.

At each meeting with each group of members, Kelley explained that if the members followed his advice he would keep them out of trouble. That Kelley himself was not completely convinced of the legality or appropriateness of his advice, however, is strongly indicated by the fact that, while he was thus engaged in soliciting and advising members, in the spring of 1981 he filed his own income tax return in which he properly reported the wages he had received in 1980. He admitted that he had talked to a number of lawyers about his legal proposition and that none of them agreed with him.

II.

The defendant contends that he could not be lawfully convicted of aiding

and abetting. He said he did not actually participate in the preparation of any of the tax forms, but only gave advice that his listeners were free to accept or reject. The contention ignores reality, for he did participate in the preparation of the forms. He told the listeners what to do and how to prepare the forms. He did so with the intention that his advice be accepted, and the fact that the members paid him for the advice and promised assistance warranted an inference of an expectation that the advice would be followed. Moreover, he actually supplied forms and materials to be filed with W-4 forms. He did not take his pen in his hand to complete the forms, but his participation in their preparation was as real as if he had.

█ The claim of First Amendment protection of his speech is frivolous. His was no abstract criticism of income tax laws. His listeners were not urged to seek congressional action to exempt wages from income taxation. Instead, they were urged to file false returns, with every expectation that the advice would be heeded.

█ The cloak of the First Amendment envelops critical, but abstract, discussions of existing laws, but lends no protection to speech which urges the listeners to commit violations of current law. *Brandenburg v. Ohio,* ·395 ·U.S. 444, 89 S.Ct. 1827, 23 L.Ed.2d 430, *United States v. Buttorff,* 572 F.2d 619 (8th Cir.1978). It was no theoretical discussion of non-compliance with laws; action was urged; the advice was heeded, and false forms were filed.

### III.

█ Relying upon *United States v. Snider,* 502 F.2d 645 (4th Cir.1974), the defendant contends that the forms actually filed were not potentially deceptive. In *Snider,* a Quaker had filed a W-4 form in which he claimed three billion dependents. He attached a letter addressed to the Internal Revenue Service explaining that he felt a sense of responsibility for all of the people of the earth and a strong religious opposition to war. He decried this country's participation in the war in Southeast Asia and

stated that he would not willingly pay federal income taxes as long as this country was engaged in that war. A divided panel of this court felt that no criminal sanctions should be imposed upon him, for there was no deceptiveness in the form as filed; it simply should have been treated by the employer as one claiming no dependents.

The holding in *Snider* has been criticized. Other courts have held that a false return is false within the meaning of the statute whether or not it is deceptive. *United States v. Hudler,* 605 F.2d 488, 490 (10th Cir.1979), *cert. denied,* 445 U.S. 961, 100 S.Ct. 1647, 64 L.Ed.2d 236 (1980); *United States v. Buttorff,* 572 F.2d 619, 626 (8th Cir.1978), *cert. denied,* 437 U.S. 906, 98 S.Ct. 3095, 57 L.Ed.2d 1136 (1978); *United States v. Hinderman,* 528 F.2d 100, 102 (8th Cir.1976).

This case, however, occasions no reconsideration of *Snider,* even if this panel were authorized to reconsider it. It is enough to observe that *Snider* was a rare case. Only one taxpayer was involved, and no employer would be expected to exempt Snider from income tax withholding on the basis of the filing. This case is quite different. It involves a number of taxpayers whose collective action was calculated to cause substantial disruption in the process of current collection of income taxes. While the legal argument that wages were not subject to taxation would not be embraced by any Internal Revenue Agent, the W-4 forms did carry a substantial potential of deception. They were addressed to employers, some of whom may have been unsophisticated. The testimony shows that Kelley's listeners found him persuasive. He was glib and articulate, and he claimed to have successfully persuaded employers to accept the W-4 forms without reporting them to the IRS. The symbolic protest involved in *Snider* was calculated to deceive no one; the false certificates that Kelley's clients filed at his behest were designed to deceive employers charged with the duty of withholding.

## IV.

Finally, Kelley complains of selective prosecution. Those members of his organization who followed his advice were not prosecuted criminally, but Kelley was the instigator of the entire affair. There is no impermissible selectivity in a prosecutorial decision to prosecute the ringleader and instigator, without prosecuting his foolish followers, when a prosecution of the instigator can be expected to bring the whole affair to an end.

## V.

We find no infirmity in Kelley's conviction.

AFFIRMED.