**PUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.                                                                                  No. 94-5929

HERBERT DANIEL FLESCHNER,
Defendant-Appellant.

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.                                                                                  No. 94-5933

ROBERT BARNWELL CLARKSON,
Defendant-Appellant.

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.                                                                                  No. 95-5063

VERNON RUBEL,
Defendant-Appellant.

Appeals from the United States District Court
for the Western District of North Carolina, at Statesville.
Robert D. Potter, Senior District Judge.
(CR-94-10-P)

Argued: October 30, 1995

Decided: October 11, 1996

Before WIDENER, ERVIN, and LUTTIG, Circuit Judges.

Affirmed by published opinion. Judge Widener wrote the opinion, in which Judge Ervin and Judge Luttig joined.

_____

**COUNSEL**

**ARGUED:** Lowell Harrison Becraft, Jr., Huntsville, Alabama, for Appellants Fleschner and Rubel; Harold Johnson Bender, Charlotte, North Carolina, for Appellant Clarkson. Michael Emile Karam, Tax Division, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Appellee. **ON BRIEF:** Loretta C. Argrett, Assistant Attorney General, Robert E. Lindsay, Alan Hechtkopf, Mark T. Calloway, United States Attorney, Tax Division, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Appellee.

_____

**OPINION**

WIDENER, Circuit Judge:

Defendants Herbert D. Fleschner, Robert B. Clarkson, and Vernon Rubel appeal their convictions for conspiracy to defraud the United States of income tax revenue in violation of 18 U.S.C. § 371. We affirm.

I

Fleschner opened a chiropractic office in Hickory, N.C. in 1978 and Rubel became one of his patients. Rubel was an enrolled agent authorized to represent people before the IRS in tax matters. In March 1986, Rubel and Fleschner began a study of income tax law. Based on their interpretation of case law and various literature, they concluded that they were not liable for federal income tax. The third defendant, Clarkson, was a South Carolina attorney. He was one of the organizers in 1979 of a club that met once a month in Hickory, N.C. known as the Carolina Patriots. In the fall of 1989, Rubel and Clarkson renewed a prior friendship and thereafter the three defendants conducted the Hickory Carolina Patriot meetings together. The evidence shows that attendees at these meetings made what are called

2

donations to join, in the range of $100 to $200. One witness described Clarkson's role as an instructor and founder of the group. Fleschner was described as a speaker, leader and an instructor although a little less knowledgeable than Clarkson. Rubel was described as a consultant who was not a speaker, but who would do research or legwork to provide additional information. There was testimony that they were instructed by the defendants to claim nine allowances on W-4 forms to prevent withholding from their paychecks, that they were led to believe that the allowances were legitimate, and that they followed the instructions. One witness, a certain Sluss, testified that when he received a letter from the Internal Revenue Service because of the claimed allowances, Fleschner and Rubel told him"not to worry about it, that it would be taken care of," and Rubel provided Sluss with a letter to send to the Internal Revenue Service. When the Internal Revenue Service penalized Sluss $500 and garnished his wages, Sluss again discussed the situation with Fleschner who told him that "they were working on it". Some attendees also testified that they were informed and advised by Clarkson and Fleschner to not file income tax returns and that based on this information and advice received, they did not file income tax returns. Another witness, one Mrs. Penley, testified that attendees were told they did not have to pay taxes they did not owe, that their wages were not income and therefore not taxable. Mrs. Penley was summoned for failure to file an income tax return for the years 1991 and 1992 and her husband was arrested. Some attendees were advised to hide income by removing themselves from the banking system and dealing in cash.

In April 1994, Fleschner, Clarkson, and Rubel were indicted for unlawfully conspiring to impede, impair, obstruct and defeat the functions of the Internal Revenue Service of ascertaining, computing, assessing and collecting income taxes in violation of 18 U.S.C. § 371.**1**

_____

**1** 18 U.S.C. § 371 states:

> If two or more persons conspire either to commit any offense against the United States, or to defraud the United States, or any agency thereof in any manner or for any purpose, and one or more of such persons do any act to effect the object of the conspiracy, each shall be fined under this title or imprisoned not more than five years or both.

Following a jury trial, all three were convicted and sentenced to prison terms. This appeal followed.

II

The first claim of the defendants on appeal is that the trial court did not permit the cross-examination of government witnesses after the government's re-direct examination.

In the first place, the objection on its face is not well taken. Absent the introduction of any new matter on re-direct examination, the rule is that recross-examination is not required. Without something new, a party has the last word with his own witness. Wharton's Criminal Evidence, 14th Ed., 1986, Vol. 2, p. 698.

The defendants have correctly quoted the applicable rules from United States v. Riggi, 951 F.2d 1368, 1375 (3rd Cir. 1991), and United States v. Caudle, 606 F.2d 451, 458 (4th Cir. 1979). "It is well settled that if a new subject is raised in redirect examination, the district court must allow the new matter to be subject to recross-examination." 951 F.2d at 1375. "To deny recross examination on matter first drawn out on redirect is to deny the defendant the right of any cross-examination as to that new matter." 606 F.2d at 458.

The defendants then claim that in four instances the government's witnesses testified to new matter on re-direct examination, but recross-examination was not permitted. That testimony is a part of the witnesses Cofer, Holstein, Penley and Whiteside. As to the witnesses Cofer, Holstein and Penley, the testimony on re-direct examination was not on new matter, but on subjects which had been the subject of the direct examination of the witnesses. In the case of Whiteside, the matter covered on re-direct examination had been raised in the cross-examination of Whiteside to the effect that Clarkson had at one point been subjected to a mental examination. On re-direct examination, the government merely showed that Clarkson had passed that mental examination, and nothing more. Even if a further examination by the defendants' attorney not in the form of cross-examination would have been permissible, cross-examination was not, and in all

4

events the denial of any further questioning was not an abuse of discretion.[2]

III

The defendants assert that the district court erred in refusing to give requested jury instructions. We review the trial court's denial of the requested jury instructions in view of the record and instructions as a whole and in the context of the trial, reversing only for prejudicial error. United States v. Park, 421 U.S. 658, 674-675 (1975); Wellington v. Daniels, 717 F.2d 932, 938 (4th Cir. 1983).

Defendants claim that the most they did was openly advocate violation of the tax laws and that they were entitled to requested instructions on a First Amendment defense.[3] Having made a timely request, the defendants would have been entitled to an instruction on a First Amendment defense if there were evidence sufficient for a reasonable jury to find in their favor on that account. Mathews v. United States, 485 U.S. 58, 63 (1988). A First Amendment defense is warranted if

_____

[2] The government persuasively argues that the defendants' brief does not identify except by page number the testimony complained of. We do not rely on this for our decision, however.

[3] Defendants requested the following instructions on a First Amendment defense:

> # 46. The first amendment to the Constitution protects a speaker's words and expressions unless both the intent of the speaker and the tendency of the speaker's words was likely to produce or incite an imminent lawless act, one likely to occur.
>
> The first amendment protects speech that merely advocates noncompliance with the law. If you determine that a speaker's purpose, or the tendency of the speaker's words, was directed to ideas or results remote from the purposes or objective of the alleged conspiracy, then that speech is protected. However, if the intent of the speaker and the tendency of the speaker's words was to produce or incite an imminent lawless act, then the speech is not protected by the first amendment.
>
> # 38. A "conspiracy to defraud the United States" is not proven by the mere open defiance of a governmental purpose to enforce a law by urging persons subject to it to disobey it.

5

there is evidence that the speaker's purpose or words are mere abstract teaching of the moral propriety of opposition to the income tax law. See Brandenburg v. Ohio, 395 U.S. 444, 447-48 (1969). "The cloak of the First Amendment envelops critical, but abstract, discussions of existing laws, but lends no protection to speech which urges the listener to commit violations of current law." United States v. Kelley, 769 F.2d 215, 217 (4th Cir. 1985) (construing Brandenburg).

The evidence in this case, however, does not support a First Amendment defense. The defendants' words and acts were not remote from the commission of the criminal acts. The evidence shows that the defendants held meetings and collected money from attendees whom they instructed and advised to claim unlawful exemptions and not to file income tax returns or pay tax on wages in violation of the United States Tax Code. The evidence shows that the attendees followed the instruction and advice of the defendants, that the attendees' unlawful actions were solicited by the defendants, and that the defendants were aware that the attendees were following their instructions and advice. The evidence discloses that a purpose of the meetings was to encourage people to unlawful actions by convincing them that it was legal to claim false exemptions, to hide income, and to refuse to file income tax returns or pay income tax. The facts in this case are similar to those in United States v. Kelly, 769 F.2d 215 (4th Cir. 1985), in which this court held that Kelly's First Amendment claim was frivolous, and to those in United States v. Buttorff, 572 F.2d 619 (8th Cir. 1978), cert. denied, 437 U.S. 906, in which the court held there was no First Amendment protection. We conclude that no reasonable juror could conclude that the defendants' words and actions were merely advocating opposition to the income tax laws.

We think the defendants' reliance on United States v. Freeman, 761 F.2d 549 (9th Cir. 1985), is misplaced. That case held that a First Amendment defense was applicable to twelve counts of a fourteen count indictment but was not applicable to two counts. In Freeman, with respect to the counts to which the First Amendment was held to apply, the court held that the defendant ". . . directed his comments at the unfairness of the tax laws generally, without soliciting or counselling a violation of the law in an immediate sense." Freeman, at 551-552. In our case, however, the Freeman reasoning does not apply, and the words of this court in Kelley do. As in Kelley, "[i]t was

6

no theoretical discussion of noncompliance with law; action was urged; the advice was heeded and false forms were filed." Kelley, at p. 217.

The defendants' assignment of error regarding requested jury instructions #34 and #35 regarding evidence required to prove a conspiracy likewise has no merit.[4] The district court instructed the jury as follows:

> What the evidence in the case must show beyond a reasonable doubt the following four elements: First, that two or more persons in some way or manner, positively or tacitly, came to a mutual understanding to try to accomplish a common and unlawful plan, as charged in the indictment.

> Second, that the defendant you're considering willfully became a member of such conspiracy. Third, that one of the conspirators during the existence of the conspiracy knowingly committed at least one of the means or methods or overt acts described in the indictment. Fourth, that such overt act was knowingly committed at or about the time alleged in an effort to effect or accomplish some object or purpose of the conspiracy.

> An overt act is any transaction or event, even one which may be entirely innocent when considered alone, but which is knowingly committed by a conspirator in an effort to accomplish some object of the conspiracy.

> One may become a member of a conspiracy without full

_____

[4] Defendants requested the following:

> 34. To prove a conspiracy to defraud the United States, there must be proof or evidence submitted which shows something more than completely external interference with the workings of a governmental program, functions or disregard for federal laws.

> 35. A conspiracy to defraud the United States is not proven by simply showing that parties, including the Defendants, failed to file tax returns and disclose income.

7

knowledge of all of the details of the unlawful scheme or the names and identities of all of the other alleged conspirators. So, if a defendant, with an understanding of the unlawful character of a plan, knowingly and willfully joins in an unlawful scheme on one occasion, that is sufficient to convict him for a conspiracy even though he had not participated at earlier stages in the scheme and even though he played only a minor part in the conspiracy.

Of course, mere presence at the scene of an alleged transaction or event, or mere similarity of conduct among various persons and the fact that they may have associated with each other, and may have assembled together and discussed common aims and interests, does not necessarily establish proof of the existence of a conspiracy. Also, a person who has no knowledge of a conspiracy, but who happens to act in a way which advances some object or purpose of a conspiracy, does not thereby become a conspirator.

The court's instructions to the jury on conspiracy, read as a whole, were not misleading and contained an adequate statement of the elements necessary to convict the defendants of conspiracy. Additionally, both refused instructions amount to little, if anything more than comments on the weight of the evidence, which, although permissible, are not required. The district court did not err in refusing instructions 34 and 35.

The defendants' assignment of error with respect to refusing requested instructions 48 and 49 is without merit. Even if applicable, and called for in any case, the record does not support giving them here.**5**

_____

**5** 48. Reliance upon a decision of the United States Supreme Court is a defense to the element of wilfulness. If you find that the Defendant relied, in good faith, upon a Supreme Court decision, then you must find him not guilty.

49. An American citizen such as the Defendant has a right the [sic] rely upon representations and statements made by the government and appearing in official publications.

8

IV

The defendants' next assignment of error is as follows: The trial court erred in not granting a verdict in favor of the defendants on the basis that the Constitutional foundation for the federal income tax is uncertain and that prosecution of defendants violated due process.

We are of opinion this assignment of error is without merit.

V

Clarkson challenges his sentence, claiming that the district court incorrectly calculated the amount of tax loss attributable to him and erred in refusing to give him a downward departure of two levels for acceptance of responsibility. Clarkson's base level for sentencing is based on the tax loss which includes the loss from all acts and omissions occurring as part of the same course of conduct or common scheme or plan. U.S.S.G. § 2T1.9(a)(1), § 1B1.3(a)(2). The government asked the district court to find a tax loss of $330,093.26, but the district court adopted the recommendation of the probation officer in the presentence report, that the amount of tax loss attributable to Clarkson was $295,817.62. Clarkson objects to this amount claiming that it includes calculations for loss involving conduct that was not part of the same course of conduct or common scheme of the conspiracy for which he was convicted.

Clarkson's argument is unpersuasive. Clarkson's conduct in furtherance of the conspiracy is not defined by or confined to just those occasions in which the three defendants were physically together or acted in unison at the Patriot meetings. $219,051.62 of the calculated tax loss was based on conduct by Clarkson occurring during the relevant time period in which Clarkson operated a business known as D-G Labor Services, Inc., which provided individuals for employment to other businesses. Clarkson compensated his D-G Labor Services workers in such a way as to avoid withholding taxes and issuance of IRS W-2 forms. This was a method consistent with and related to that proved at trial of evading or camouflaging income. See Guideline 2T1.1, Application Note 2. The district court was not clearly erroneous in finding that these actions by Clarkson although not necessarily associated with people connected with the Patriot

9

meetings were consistent with the course of conduct and common scheme of the conspiracy.

We have also considered Clarkson's claim that the district court erred in denying a downward departure for acceptance of responsibility and conclude that it has no merit.

The judgment of the district court is accordingly

AFFIRMED.

10