UNPUBLISHED

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.                                                                No. 98-4074

RICHARD D. SALVATIERRA,
Defendant-Appellant.

Appeal from the United States District Court
for the District of Maryland, at Baltimore.
Marvin J. Garbis, District Judge.
(CR-96-480-MJG)

Submitted: January 12, 1999

Decided: January 26, 1999

Before MURNAGHAN and MOTZ, Circuit Judges, and PHILLIPS,
Senior Circuit Judge.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

Barry Coburn, COBURN & SCHERTLER, Washington, D.C., for
Appellant. Lynne A. Battaglia, United States Attorney, Joseph L.
Evans, Assistant United States Attorney, Baltimore, Maryland, for
Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Richard J. Salvatierra was charged with one count of conspiracy to defraud the United States in violation of 18 U.S.C.§ 371 (1994), thirteen counts of submitting false and fraudulent claims to the United States in violation of 18 U.S.C. §§ 2, 287 (1994), and three counts of willfully filing a false tax return in violation of 26 U.S.C. § 7206(1) (1994) and 18 U.S.C. § 2. A jury found Salvatierra not guilty of the first fourteen counts and guilty of the last three counts concerning false tax returns. On appeal, Salvatierra contends that: (1) the evidence was not sufficient to sustain the convictions, and (2) the court made several sentencing errors. Finding no reversible error, we affirm.

We review challenges to the sufficiency of the evidence by viewing the evidence at trial in the light most favorable to the prosecution, including all reasonable inferences that can be drawn from the evidence. See Glasser v. United States, 315 U.S. 60, 82 (1942). In 1978, Salvatierra founded a company called Triton which provided information dissemination services to government agencies. Due to Salvatierra's Hispanic heritage, Triton was a certified minority business given preferences when bidding for government contracts. In the late 1980's, Triton's minority status was due to expire. In order to extend Triton's contract preference, Salvatierra arranged to have Ricards International, Inc. ("RII") purchase Triton. RII was owned by Jose Ricardo, and, like Triton, was a certified minority business eligible for contract preferences.

RII, which had no assets or employees, assumed all of Triton's employees, assets, contracts, and property. RII agreed to purchase Triton stock out of the ongoing proceeds generated by the newly reconstituted RII. Salvatierra, Triton's principal stockholder, received payment for his stock pursuant to a debenture by which he was to be paid $266,000 over time.

2

RII received contracts from several government agencies to warehouse and distribute informational pamphlets and act as a referral service. As part of its responsibilities, RII leased warehouse space. RII was permitted to bill the contracting government agency for the actual cost of leasing warehouse space.

In 1990, Salvatierra and Albert Ferri, RII's general counsel, created Potomac Leasing, Inc. ("PLI"). Edsel Billingy, a senior vice-president at RII, was included in the corporation. Salvatierra's home address served as PLI's principal office. He owned forty percent of PLI stock and Ferri and Billingy each owned thirty percent. PLI leased warehouse and office space. PLI then sub-leased the various spaces to RII at rates greater than that which PLI paid and at rates greater than that which RII could have leased the spaces directly from original landlords. Government regulations require that services between any entities under common control can only be billed to the government on the basis of the actual cost incurred.

Pursuant to a plea agreement, Billingy testified for the Government. He stated that PLI accumulated funds that represented the difference between the leasing fees it was paying building owners and the fees it was charging RII for leasing the same space. Those funds were distributed to Salvatierra, Billingy, and Ferri in proportion to their share of ownership in PLI. Billingy stated that Salvatierra devised a plan whereby PLI's 1991 corporate tax return was used as a mechanism to avoid having any of the three stockholders show the cash disbursement as personal income on their individual tax returns. Salvatierra told Billingy that the disbursements were made to appear as PLI's corporate expenses on its tax return. No form W-2s or 1099s were issued to any of the three stockholders. Salvatierra also told Billingy that they would not have to claim the disbursement as income because the disbursements were treated as corporate expenses.

At some point, the plan came to the attention of government authorities. According to Billingy, Salvatierra discussed creating false loan documents to make it appear as if the disbursements were loans.

Salvatierra did not report any of the money he received from PLI as income on his 1991 or 1992 personal income tax return. After an investigation was commenced by government authorities, Salvatierra

3

filed an amended 1992 personal income tax return in which he declared some of PLI's funds. He also filed a 1993 personal income tax return in which he declared some of the money he received from PLI. Testimony from Billingy and Salvatierra's ex-wife and secretary showed that he used the PLI funds for personal expenses.

In addition, on his 1991 and 1992 personal income tax return, Salvatierra overstated his unreimbursed employee business expense deductions. By doing so, Salvatierra was able to decrease his tax burden. Salvatierra also failed to disclose on his 1991, 1992, and 1993 personal income tax returns the debenture payments he was receiving from RII in exchange for his Triton stock.

At sentencing, Salvatierra objected to the calculation of tax loss and the application of an upward adjustment to the offense level when there is unreported income from criminal activity in excess of $10,000. See U.S. Sentencing Guidelines Manual §§ 2T1.1(b)(1), 2T4.1 (1995). In computing the tax loss, the court considered the false PLI deductions, the failure of the three stockholders to report income based upon PLI's disbursements, Salvatierra's false claims of unreimbursed business expenses, and his failure to report income with regard to the debentures. The court found a total tax loss of $98,596.68, resulting in a base offense level of 14. See USSG § 2T4.1(I). The court imposed a two-level upward adjustment for having unreported income in excess of $10,000 in 1991 and 1992 due to the disbursements Salvatierra received from PLI. See USSG § 2T1.1(b)(1). Salvatierra was sentenced to 27 months' imprisonment and a one-year term of supervised release.

Under § 7206(1), the following elements must be proven beyond a reasonable doubt: (1) Salvatierra made and subscribed to a tax return containing a written declaration; (2) the tax return was made under penalty of perjury; (3) Salvatierra did not believe the return to be true and correct as to every material matter; and (4) he acted willfully. See United States v. Aramony, 88 F.3d 1369, 1382 (4th Cir. 1996), cert. denied, ___ U.S. ___, 65 U.S.L.W. 3778, 65 U.S.L.W. 3781 (U.S. May 27, 1997) (No. 96-752).

Salvatierra challenges the fourth element, contending that there was insufficient evidence of willfulness in filing false tax returns.

4

Willfulness is "a voluntary, intentional violation of a known legal duty." Cheek v. United States, 498 U.S. 192, 200-01 (1991) (internal quotation marks omitted). In Salvatierra's case, if he knew that PLI's 1991 tax return mislabeled disbursements as business expenses and that he should have reported more income in his personal tax returns than he did, then he acted willfully. See, e.g. , Sansone v. United States, 380 U.S. 343, 353 (1965). At trial, Salvatierra claimed that his reliance on his accountant in the preparation of the tax returns negates the element of willfulness. See United States v. Morris, 20 F.3d 1111, 1115 n.4 (11th Cir. 1994) (noting that good-faith belief that defendant complied with tax laws is a complete defense to willfully filing a false tax return).

In determining the sufficiency of the evidence, we must view the evidence in the light most favorable to the government and inquire whether any rational trier of fact could find the essential elements of the crime beyond a reasonable doubt. See Jackson v. Virginia, 443 U.S. 307, 319 (1979). We do not weigh the evidence or review the credibility of the witnesses. See United States v. Wilson, 118 F.3d 228, 234 (4th Cir. 1997).

Although Salvatierra denied having conversations with Billingy regarding the manner in which PLI's disbursements should be handled, the jury was entitled to believe Billingy's testimony. See United States v. Singh, 54 F.3d 1182, 1186 (4th Cir. 1995) (jury makes credibility determinations and resolves conflicts presented by the evidence). Thus, with Billingy's testimony in mind, there was sufficient evidence to find that Salvatierra willfully filed a false income tax return form on behalf of PLI due to the mislabeling of the disbursements to the stockholders. Likewise, there was sufficient evidence to find that Salvatierra willfully submitted false personal income tax return forms in 1991 and 1992 due to his failure to declare the funds received from PLI.

Salvatierra also contends the court made several errors with regard to computing the tax loss for purposes of sentencing. The court's factual findings with regard to computing tax loss is reviewed for clear error. See United States v. Fleschner, 98 F.3d 155, 160 (4th Cir. 1996), cert. denied, ___ U.S. #6D6D 6D#, 65 U.S.L.W. 3838 (U.S. June 23, 1997) (No. 96-7983). Based upon a finding that Salvatierra caused a

5

total tax loss of $98,596.68, the court imposed a base offense level of 14. See USSG § 2T4.1.

Salvatierra argues that it was error for the court to include as part of the total tax loss the tax loss caused by Ferri and Billingy based upon their alleged failure to report funds received from PLI. In computing tax loss, the court may consider the conduct of co-conspirators taken in furtherance of the execution of the jointly-undertaken criminal activity that was reasonably foreseeable by the defendant. See United States v. Martinez-Rios, 143 F.3d 662, 674 (2d Cir. 1998); United States v. Clark, 139 F.3d 485, 490 (5th Cir. 1998), cert. denied, ___ U.S. ___, 67 U.S.L.W. 3237 (U.S. Oct. 5, 1998) (No. 98-5463).

In 1991, Ferri and Billingy each received approximately $15,000 from PLI. The court found the tax loss attributed to those two men to be about $8500, or 28% of the funds received. See USSG § 2T1.1(c)(1)(A). Neither the Government nor the probation office had argued that the tax loss caused by Ferri and Billingy should be considered part of Salvatierra's relevant conduct. According to Salvatierra, there was no evidence of an agreement among the three stockholders regarding the manner in which the PLI money should be handled when filing personal income tax forms, nor was there any evidence of a jointly undertaken activity. Further, Salvatierra asserts that there was no evidence of how Ferri treated his share of the PLI money.

We conclude that the district court did not err in finding that there was a jointly undertaken criminal activity. It appears, however, that the court overestimated the tax losses that could be attributed to Salvatierra on account of conduct by Ferri and Billingy. While the court found that Billingy did not report any of the funds received from PLI, the evidence showed that Billingy reported about $5000 of the $15,000 he received in 1991. Furthermore, Salvatierra correctly contends that there was no evidence explaining whether or to what extent Ferri did or did not properly report his receipt of funds from PLI. Nevertheless, even if the $8500 tax loss allegedly caused by Ferri's and Billingy's conduct is subtracted from the total tax loss attributed to Salvatierra, the base offense level calculated by the district court does not change. Salvatierra would be left with a tax loss of about

6

$90,000, far more than the $70,000 tax loss needed for an offense level of 14. Thus, even if there was an error, Salvatierra was not prejudiced.

Salvatierra also contends the court erred by considering Salvatierra's false claims of deductions for unreimbursed business expenses. The court stated that Salvatierra's "generalized, largely vague, assertions that his expenditures were for business purposes are not worthy of the slightest credence." (J.A. at 124). There was testimony that despite Salvatierra's contentions, RII always reimbursed him for his business expenses. His ex-wife identified some of the expenses as personal, including items for car repairs, health club memberships, vacations, and political contributions. In addition, the evidence established that certain travel expenses Salvatierra insisted were business related were actually family related, including trips to visit his son at college in North Carolina and a brother-in-law at Hilton Head, South Carolina. We defer to the district court's finding regarding Salvatierra's credibility and find that it did not clearly err in considering the unreimbursed business expenses in determining the tax loss. See United States v. Sampson, 140 F.3d 585, 591 (4th Cir. 1998).

Salvatierra also contends that the tax loss occasioned by the 1991 PLI income tax return should not be attributed to him. He claims that there was no evidence that he willfully filed a false tax return in that instance. This argument is a duplication of Salvatierra's sufficiency of the evidence argument. As previously stated, there was sufficient evidence to find Salvatierra's conduct willful. Accordingly, the court did not err by including this tax loss as part of Salvatierra's total tax loss.

In addition, Salvatierra contends that the court erred by including as part of the total tax loss Salvatierra's 1993 Schedule C deductions. Salvatierra's 1993 personal income tax return was completed with the understanding that there was investigation regarding PLI. Unlike the 1991 and 1992 personal income tax returns, Salvatierra now claimed some of the income received from PLI. He attempted to offset the income by claiming several Schedule C deductions, which were similar to the unreimbursed business expenses claimed in 1991 and 1992. The court found these deductions to "have the same lack of validity as did [Salvatierra's] deductions for unreimbursed employee business

7

expenses." (J.A. at 125). Salvatierra attempted to shift the blame to the accountants who prepared the tax return. However, the accountants relied solely on information provided by Salvatierra. We find the court did not clearly err in finding that the 1993 deductions were part of the same course of conduct intended by Salvatierra to reduce his tax liability.

Salvatierra also argues that the court erred by considering the tax loss due to under-reporting the debenture payments received in 1991, 1992, and 1993 in determining the total tax loss. Salvatierra contends that there was no evidence that he knew the payments needed to be reported as income. He also contended that the failure to report the payments was not relevant conduct because it was not related to the charged conduct.

The court found that due to Salvatierra's experience in business, "he knew full well that these debenture payments constituted income to him." (J.A. at 126). Furthermore, the court found noteworthy Salvatierra's failure to disclose this source of income to his accountants when they were preparing amended tax returns in 1993. Concealing sources of income from an accountant that results in a false tax return may be evidence of willfulness to avoid paying taxes. See United States v. Beidler, 110 F.3d 1064, 1069 (4th Cir. 1997) (citing Spies v. United States, 317 U.S. 492, 499 (1943)); United States v. Madden, 300 F.2d 757, 758 (4th Cir. 1962).

As for whether the conduct can be considered relevant conduct for sentencing purposes, it is well established that conduct may be considered relevant even if the defendant is not convicted of an offense based on the conduct. The Government need only establish the existence of relevant conduct by a preponderance of the evidence. See United States v. Jones, 31 F.3d 1304, 1316 (4th Cir. 1994). In determining the total tax loss attributable to an offense as relevant conduct under USSG § 1B1.3(a)(2), "all conduct violating the tax laws should be considered as part of the same course of conduct or common scheme or plan unless the evidence demonstrates that the conduct is clearly unrelated." USSG § 2T1.1 comment. (n.2).

Salvatierra's failure to report the debenture payments was part of a pattern of conduct that included his failure to report other sources

8

of income. All the conduct occurred within a three-year period and involved the same tax returns and the same source of income, namely RII. We find no error in considering this source of income as part of the total tax loss.

Finally, Salvatierra contends it was error to impose a two-level enhancement for failing to report income exceeding $10,000 in 1991 and 1992 that was derived from criminal activity. See USSG § 2T1.1(b)(1). The Government sought the enhancement due to Salvatierra's use of PLI to overcharge government agencies for warehouse and office space. This conduct was the basis of counts two through fourteen charged in the indictment. The Supreme Court recently held "that a jury's verdict of acquittal does not prevent the sentencing court from considering conduct underlying the acquitted charge, so long as that conduct has been proved by a preponderance of the evidence." United States v. Watts, 519 U.S. 148, 157 (1997).

The court found that the Government proved the criminal activity by a preponderance of the evidence. Salvatierra testified that PLI was formed because landlords were not willing to lease space to RII because of its financial situation. The court did not find this excuse credible, noting that Salvatierra effectively controlled both corporations and that the rent PLI charged RII, which was passed on to government agencies, was excessive. The court also noted that PLI inflated the amount of square footage it was subletting to RII. We agree with the district court that the Government proved its case of fraud against the government agencies by a preponderance of the evidence. Accordingly, the two-level enhancement was proper.

We affirm the convictions and sentence. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and argument would not aid the decisional process.

AFFIRMED

9