**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 06-4299**

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

versus

JUAN MEDINA-GARCIA,

Defendant - Appellant.

Appeal from the United States District Court for the Western District of North Carolina, at Bryson City.  Lacy H. Thornburg, District Judge.  (2:04-cr-00111)

Argued:  March 14, 2007                    Decided:  May 17, 2007

Before NIEMEYER and WILLIAMS, Circuit Judges, and T. S. ELLIS, III, Senior United States District Judge for the Eastern District of Virginia, sitting by designation.

Affirmed by unpublished per curiam opinion.

**ARGUED:** William Edmund Loose, Asheville, North Carolina, for Appellant.  Amy Elizabeth Ray, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Asheville, North Carolina, for Appellee.  **ON BRIEF:** Gretchen C. F. Shappert, United States Attorney, Charlotte, North Carolina, for Appellee.

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Juan Medina-Garcia appeals his conviction for second degree murder, a violation of 18 U.S.C.A. §§ 1111 and 1152 (West 2000 & 2006). Medina-Garcia argues that the district court erred by denying his Rule 29 Motion for Judgment of Acquittal on the charge of first degree murder and the lesser included offense of second degree murder and by instructing the jury on first degree murder. He contends that the evidence produced at trial was insufficient to submit a murder charge to the jury and that his conviction must have resulted from juror confusion caused by the first degree murder instruction. Because the Government produced evidence sufficient to support Medina-Garcia's second degree murder conviction, and Medina-Garcia merely speculates that his conviction rests on a basis other than the jury's acceptance of the Government's proof, we affirm.

I.

On November 15, 2004, a grand jury returned a two-count indictment charging Medina-Garcia, a non-Indian, with first degree murder of an Indian in Indian country,[1] in violation of 18 U.S.C.A. §§ 1111 and 1152 (Count 1), and using a firearm during and in

---

[1] "Indian country" includes "all land within the limits of any Indian reservation under the jurisdiction of the United States Government." 18 U.S.C.A. § 1151 (West 2000). The indictment charged Medina-Garcia with committing murder in the Eastern Band of Cherokee Indian Reservation.

relation to a crime of violence, causing the death of a person, in violation of 18 U.S.C.A. §§ 924(c)(1) and (i)(1) (West Supp. 2006) (Count 2).

A jury trial commenced on April 18, 2005. At trial, Medina-Garcia stipulated that he was born in Mexico and was not an Indian and that the victim, John David Smoker, was an enrolled member of the Cherokee Indian Tribe. The Government presented the testimony of eyewitnesses, law enforcement officers, and expert witnesses.

George Lomas, the twelve-year old son of Medina-Garcia's long-term girlfriend, Reva Bird, with whom Medina-Garcia had lived for nine years, testified concerning the events that led to Smoker's death. Lomas described Medina-Garcia as being like a father to him and stated that Smoker was his (Lomas's) uncle. He testified that on the night of the shooting, Medina-Garcia, Smoker, and Miguel Mendoza, his aunt's husband, were playing cards. He fell asleep on the couch and awoke to an argument between Medina-Garcia and Smoker about money that was apparently missing. Medina-Garcia asked Smoker if he wanted to "take it outside," and Smoker agreed. Once outside, Medina-Garcia threw a beer can at Smoker, hitting him in the face. The two men started grabbing at each other and throwing punches. About 30 seconds into the fight, Lomas, who was standing in the doorway, heard gunshots and saw sparks. Lomas could not recall the number of shots, only that they occurred in quick succession. Medina-Garcia then retrieved his shirt from the

3

ground, fixed his pants, asked Mendoza to come with him, ran to his truck, and drove off by himself after Mendoza declined to accompany him. Lomas claimed that he never saw a gun before or after the shooting.

The Government questioned Lomas about testimony he had given the grand jury, in which he had stated that he saw Medina-Garcia put a black gun with a brown handle into his waistband as he headed for his truck. At trial, Lomas claimed that he had not been sure and "couldn't really tell." (J.A. at 148.)[2] The Government also questioned him about demonstrating for the grand jury the manner in which Medina-Garcia put the gun in the waistband, but Lomas denied remembering any such demonstration. When asked about a statement he gave after the shooting to Stuart Kelly, a special agent with the FBI, Lomas acknowledged that he had told Kelly that he saw a gun in Medina-Garcia's hands after the shots were fired, but claimed to have been confused by the agent's questions.

Kelly testified regarding his interview with Lomas, stating that Lomas had told him that he saw Medina-Garcia with a pistol in his hand and that he had seen the pistol before and knew Medina-Garcia had a small, black pistol that he carried inside his pants.

Mendoza and Bird also testified about the fight, offering similar, but different accounts of what had occurred. Mendoza

---

[2]Citations to "(J.A. at _.)" refer to the contents of the joint appendix prepared by the parties in this appeal.

4

stated that before the fight, all the adults had been drinking beer, although Bird and Medina-Garcia had not had that much to drink. At the beginning of the argument between Smoker and Medina-Garcia, Smoker asked Medina-Garcia if he had a gun, and Medina-Garcia said no. Smoker suggested they take the argument outside, and Medina-Garcia agreed. From where he stood outside in the doorway, Mendoza tried to dissuade them from fighting, but he did not get close to them. The two began shoving and pushing, but neither appeared to be throwing punches. Mendoza did not see a gun or sparks, but he heard the shots.

Reva Bird testified that when Medina-Garcia and Smoker had initially exited the trailer, Smoker told Medina-Garcia to "go ahead and pull out his gun or knife . . . if he wanted to fight." (J.A. at 263.) Medina-Garcia claimed to be unarmed. According to Bird, "they stood there for a few minutes." (J.A. at 263.) Mendoza tried to calm them down, but then they started fighting. Bird saw "something fly" when the fight started, but she wasn't sure what it was. (J.A. at 264.) After a few minutes, she heard a gunshot, "one, and then two more." (J.A. at 266.) The shots were in quick succession, although there was a very short pause after the first one. Bird testified that while Smoker and Medina-Garcia were fighting, Smoker was trying to choke Medina-Garcia and threatened to kill him, but she did not know how long before the shots were fired that she heard the threat.

5

Ted Lambert, a paramedic who was called to respond to the shooting, testified that there was a wound on the back of Smoker's head that suggested he had been hit with a blunt object. This observation was consistent with the testimony of Christopher Gulledge, the forensic pathologist who conducted the autopsy on Smoker's body.

Gulledge testified that the cause of death was a gunshot wound to the chest. Soot present in the chest wound indicated that the gun was fired at very close range; it was either touching the victim when it was discharged or it was within a quarter to an eighth of an inch away. Gulledge described this as "near contact." Smoker also had a gunshot wound to the abdomen, which was also a "near-contact" wound. This shot did not injure Smoker as severely as it would have most people, because Smoker was morbidly obese, so the bullet remained in his fatty tissue instead of entering his abdominal cavity. The third gunshot wounded Smoker's right thigh. This shot was not fired from as close to Smoker's body as the other two, and Gulledge could not determine the actual distance. The bullet from the thigh wound had an odd trajectory, suggesting that Smoker's leg was raised in some fashion or that the body was twisted in some fashion when Smoker was shot. There were also wounds to the back of Smoker's head that were caused by being struck by a blunt object and did not appear to have been caused by a fist. Smoker was hit with enough force on one of the wounds that

6

there was a very small chip in his skull.  Gulledge did not see evidence of bruising on Smoker's face or hands or evidence of the general contusions or abrasions that he typically saw in someone who had been engaged in a fist fight.  He therefore surmised that "a shoving, wrestling kind of fight would be more likely."  (J.A. at 480.)

Elizabeth Patel, a chemist in the trace evidence section of the North Carolina State Bureau of Investigation Crime Laboratory, testified as an expert in gunshot residue analysis.  She stated that she conducted a gunshot residue analysis on Smoker.  The results were not consistent with someone who had fired a weapon, although the test results did not eliminate the possibility that Smoker could have fired a gun.

At the close of the Government's evidence, the defense moved for a judgment of acquittal pursuant to Federal Rule of Criminal Procedure 29 on the first degree murder charge.[3]  The district court denied the motion, but told both counsel that the court would submit the lesser included offenses of second degree murder and voluntary manslaughter to the jury.

---

[3]Rule 29 of the Federal Rules of Criminal Procedure provides, in pertinent part, that "[a]fter the government closes its evidence or after the close of all the evidence, the court on the defendant's motion must enter a judgment of acquittal of any offense for which the evidence is insufficient to sustain a conviction."  Fed. R. Crim. P. 29(a).

Medina-Garcia chose to testify. He offered a description of the fight with Smoker that contradicted the evidence presented by the Government. According to Medina-Garcia, Smoker instigated the fight. Smoker first became angry because he thought he was being accused of stealing a twenty-dollar bill from Medina-Garcia, and Medina-Garcia tried to calm him down, but to no avail. As soon as Smoker learned that Medina-Garcia was not carrying a weapon, he knocked a beer can out of Mendina-Garcia's hand and "came up towards [him]." (J.A. at 517.) They began grabbing each other and continued to struggle for about three to four minutes. At one point, Smoker put his hands around Medina-Garcia's neck, threatened to kill him, and drew a gun. Although they struggled with the weapon, Medina-Garcia never actually grabbed the gun. Still, Smoker told him to "let go of the gun or I'm going to shoot your hand." (J.A. at 520.) At that moment, Medina-Garcia heard the first shot. They kept struggling; he heard another shot; they struggled more; he heard a third shot; and Smoker fell to the ground.

At the close of all the evidence, Medina-Garcia's counsel reasserted his motion for a Rule 29 dismissal, and the district court denied the motion. The district court instructed the jury on first degree murder, second degree murder, and voluntary manslaughter and explained to the jury how to approach the lesser included offenses in Count One. During its deliberations, the jury

8

asked the district court to repeat the definitions of the terms related to the defendant's mental state. The jury also asked to see some photos and clothing that had been recovered from Smoker's body (all of which had previously been admitted into evidence).

On April 21, 2005, the jury returned a verdict of guilty as to the lesser included offense of second degree murder on Count One and not guilty as to using a firearm during a crime of violence as charged in Count Two. On March 1, 2006, the district court sentenced Medina-Garcia to 270 months' imprisonment.

Medina-Garcia timely appealed, and we have jurisdiction pursuant to 28 U.S.C.A. § 1291 (West 2006) (providing for appellate jurisdiction over "final decisions" of the district court).

II.

We review de novo the denial of a Rule 29 motion for judgment of acquittal based on insufficient evidence. United States v. Gallimore, 247 F.3d 134, 136 (4th Cir. 2001). In reviewing challenges to the sufficiency of the evidence supporting a conviction, our task is to determine, "viewing the evidence and the reasonable inferences to be drawn therefrom in the light most favorable to the Government, whether the evidence adduced at trial could support any rational determination of guilty beyond a reasonable doubt." United States v. Burgos, 94 F.3d 849, 863 (4th Cir. 1996) (en banc) (internal quotation marks omitted).

We review for abuse of discretion the district court's decision to give, or not to give, a requested jury instruction, reversing only for prejudicial error. United States v. Hurwitz, 459 F.3d 463, 474 (4th Cir. 2006); United States v. Fleschner, 98 F.3d 155, 158 (4th Cir. 1996).

A.

Medina-Garcia was charged with first degree murder in violation of 18 U.S.C.A §§ 1111 and 1152, but he was ultimately convicted of the lesser included offense of second degree murder. Section 1111(a) defines murder as "the unlawful killing of a human being with malice aforethought." 18 U.S.C.A. § 1111. Pursuant to § 1111(a), a murder that meets specific criteria enumerated in the statute, as well as any killing that is "willful, deliberate, malicious, and premeditated . . . is murder in the first degree," and "any other murder is murder in the second degree." Id. Section 1152 extends the coverage of federal criminal law to Indian country, but with certain exceptions, including an exception for "offenses committed by one Indian against . . . another Indian." 18 U.S.C.A. § 1152. Accordingly, to convict Medina-Garcia of second degree murder, the jury was required to find that Medina-Garcia, a non-Indian, killed Smoker, an Indian, with malice aforethought and within Indian country. To convict Medina-Garcia of first degree murder, the jury needed to find an additional

10

element -- that Medina-Garcia acted with willfulness, deliberateness, maliciousness and premeditation.

Medina-Garcia contends that because the Government presented insufficient evidence to prove premeditation and malice aforethought, the district court erred by (1) denying his Rule 29 motion for judgment of acquittal of first degree murder and instructing the jury on first degree murder, and (2) denying his Rule 29 motion as to the lesser included offense of second degree murder.

B.

We address Medina-Garcia's second argument first. The statute of conviction does not define "malice aforethought." See 18 U.S.C. § 1111(a). The district court, without objection from Medina-Garcia, defined malice aforethought as "either to kill another person deliberately and intentionally or to act with callous and wanton disregard for human life." (J.A. at 626-27.) We have previously explained that to prove malice aforethought within the meaning of § 1111(a), the Government need not show a specific intent to kill or injure, as malice aforethought "may be established by evidence of conduct which is reckless and wanton and a gross deviation from a reasonable standard of care, of such a nature that a jury is warranted in inferring that the defendant was aware of a serious risk of death or serious bodily harm." United

11

States v. Williams, 342 F.3d 350, 356 (4th Cir. 2003) (internal quotation marks omitted).

In support of his contention that the Government provided insufficient evidence of malice aforethought, Medina-Garcia asserts that "[t]here was no evidence of any statements by [Medina-Garcia] showing any type of malice aforethought." (Appellant's Br. 22.) Malice aforethought, however, can be proven by circumstantial evidence. There is no requirement that the evidence include statements made by the defendant. See Williams, 342 F.3d at 356 ("Whether malice is present in a given case must be inferred by the jury from the whole facts and circumstances surrounding the killing." (internal quotation marks omitted)).

The Government presented evidence that Lomas, an eyewitness to the fight between Medina-Garcia and Smoker, told an investigating officer and a grand jury that he saw Medina-Garcia put a black gun with a brown handle into his waistband as he ran to his truck after Smoker had been shot.[4] This version of events was consistent with the expert testimony provided by the Government, which revealed that the results of a gun-shot residue analysis on Smoker were not consistent with someone who had fired a weapon, and that Smoker had been struck in the back of the head with a blunt object. Moreover,

---

[4]The Government also presented evidence that after the fight, Lomas told Special Agent Kelly that in the past he had seen Medina-Garcia with the same gun that he saw on the night of the shooting. Lomas also told Kelly that he knew Garcia had a small, black pistol that he carried inside his pants.

12

Gulledge testified that when the shots were fired into Smoker's chest and stomach, the shooter was holding the gun less than a quarter inch from Smoker's body.  From this evidence, a reasonable jury could conclude that Medina-Garcia fired three shots at Smoker.  With respect to two of the shots, a jury could reasonably find that Medina-Garcia placed the gun within a quarter inch of Smoker's chest and abdomen and pulled the trigger.  Such conduct represents, at a minimum, reckless conduct of "such a nature that a jury is warranted in inferring that the defendant was aware of a serious risk of death or serious bodily harm."  Williams, 342 F.3d at 356 (internal quotation marks omitted) (holding that the evidence adduced at trial was sufficient for the jury to find malice aforethought where the defendant accompanied others to rob a known drug dealer, even though the other robbers had made him aware that "robbing [the victim] might also entail killing him").  We therefore conclude that the Government presented sufficient evidence for a reasonable jury to find malice aforethought.  The district court did not err in denying Medina-Garcia's Rule 29 motion for a judgment of acquittal of second degree murder.

C.

Although Medina-Garcia was not convicted of first degree murder, he nevertheless contests the district court's submission of the first degree murder charge to the jury.  He argues that the

13

district court erred by denying his Rule 29 motion and instructing the jury on first degree murder, a contention that reflects Medina-Garcia's belief that he would not have been convicted of second degree murder had the court not instructed the jury on first degree murder. Medina-Garcia assumes that the jury, faced with a choice between four options -- first degree murder, second degree murder, voluntary manslaughter, and acquittal -- became hopelessly confused and ultimately reached a compromise verdict on Count One. For support, he points to the jury's request that the district court repeat the definitions of the terms related to the defendant's mental state. He also relies on the jury's failure to convict him of Count Two, the firearm charge, arguing that in a case in which the victim clearly died from a gunshot wound, it "makes no sense that the defendant could be convicted of murder of any sort and not be convicted of the [firearm] charge." (Appellant's Br. at 23.)

Because Medina-Garcia has offered no basis on which we can conclude that he was prejudiced by the submission of the first degree murder charge to the jury, we need not delve into the sufficiency of the evidence to support that charge. Medina-Garcia merely speculates that the jury's request that the district court repeat portions of its instructions demonstrates juror confusion, when the request could just as easily reflect the jury's careful attention to the crucial issue in the case. Moreover, we cannot infer prejudice from Medina-Garcia's acquittal on Count Two for two

14

reasons. First, we lack any basis for concluding that the inconsistency in the verdict resulted from juror confusion, rather than a deliberate decision to exercise leniency. See United States v. Powell, 469 U.S. 57, 66 (1984) (rejecting, "as imprudent and unworkable, a rule that would allow criminal defendants to challenge inconsistent verdicts on the ground that in their case the verdict was not the product of lenity, but of some error that worked against them," because "[s]uch an individualized assessment of the reason for the inconsistency would be based either on pure speculation, or would require inquiries into the jury's deliberations that courts generally will not undertake"). Second, even if we assumed that the acquittal on the firearm charge was the result of confusion, there is no evidence that any such confusion was caused by the instructions on Count One, rather than a misunderstanding of the instructions concerning Count Two.

As discussed above, the Government produced sufficient evidence for a reasonable jury to convict Medina-Garcia of second degree murder. We are unwilling to speculate that Medina-Garcia's conviction resulted from something other than the juror's acceptance of the Government's proof. Accordingly, we conclude that, even if the district court erred in denying Medina-Garcia's Rule 29 motion and instructing the jury on first degree murder (and we do not suggest that it did), any such error was harmless.

## III.

In sum, we conclude that the district court did not err in denying Medina-Garcia's Rule 29 motion for judgment of acquittal on the lesser included offense of second degree murder. Even if we were to assume that the district court erred in submitting the first degree murder charge to the jury, any such error was harmless. We therefore affirm Medina-Garcia's conviction.

<u>AFFIRMED</u>

16